**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION**

**SHARON GRAHAM, and
BILLY BOB GRAHAM**                                                    **PLAINTIFFS**


**V.**                                                         **Civil No. 1:12-cv-58-HSO-RHW**


**ALL AMERICAN CARGO ELEVATOR, and
LEESON ELECTRIC CORPORATION**                           **DEFENDANTS**


**MEMORANDUM OPINION AND ORDER DENYING DEFENDANT ALL
AMERICAN CARGO ELEVATOR, LLC'S MOTION [138] TO EXCLUDE
EXPERT FOR FAILURE OF METHODOLOGY**

BEFORE THE COURT is Defendant All American Cargo Elevator, LLC's

("All American's") Motion [138] to Exclude Expert for Failure of Methodology.

Plaintiffs Sharon and Billy Bob Graham have filed a Response [148] and All

American a Reply [155].  After considering the pleadings on file, the record, and

relevant legal authorities, the Court finds that All American's Motion [138] should

be denied.

## I.  BACKGROUND

In 2007, Defendant All American sold Plaintiffs Sharon and Billy Bob

Graham a residential cargo elevator for use in their elevated home in Pearlington,

Mississippi.  Dep. of Sharon Graham [140-5] at p. 11-12, 19-20.  All American

installed the elevator and serviced it pursuant to a maintenance agreement

purchased by the Grahams.  *Id*.  On October 18, 2010, the cargo elevator fell

approximately ten feet to the ground when Ms. Graham stepped onto its platform to

retrieve a three to four pound potted plant.  *Id.* at pp. 48-53, 56, 78.  Ms. Graham

descended with the elevator and alleges that she crushed her heel and suffered

other injuries upon impact.  *Id.* at pp. 48-53, 56, 78.  The Grahams assert that the

shaft on the gearbox of the elevator's drawing mechanism sheared, causing the

elevator to free fall.  Pls.' Resp. [151] at pp. 1-2.  They allege that All American is

liable to them because "the cause of product failure was misalignment of the drum

which was undisputedly welded on the Leeson [Electric Corporation] gear box shaft

by All American."  *Id.* at p. 2.

On October 26, 2011, the Grahams filed a Complaint against All American in

the Circuit Court of Hancock County, Mississippi.  Pls.' Compl. [140-1] at pp. 2-4.

They filed an Amended Complaint on October 31, 2011, and a Second Amended

Complaint, adding the gearbox manufacturer Leeson as a Defendant, on January

20, 2012.  Pls.' Am. Compl. [140-2] at pp. 3-4; Pls.' Sec. Am. Compl. [140-3] at p. 1.

The action was removed to this Court in February 2012.  The Grahams allege

> that the product which broke, was designed and/or
> manufactured in a defective manner and breached implied
> and express warranties and failed to conform to other
> factual representations, upon which the Plaintiffs (or Co-
> Defendant, All American) relied upon in electing to use said
> product and;
>
> (1) The defective condition rendered the product
> unreasonably dangerous to the user or consumer and;
>
> (2) The defective and unreasonable condition of the product
> caused the damages to the Plaintiff which recovery is
> sought.

Pls.' Sec. Am. Compl. [140-3] at p. 2.  The Grahams additionally assert "[t]hat the

Defendants failed to adequately warn of possible failure and free fall potential." Pls.' Compl. [140-1] at p. 2; First Am. Compl. [140-2] at p. 2.

The Grahams' claims against Leeson (now known as RBC Manufacturing Corporation) have been dismissed.  Agreed Order of Dismissal [160].  Now before the Court is All American's Motion [138] to Exclude the Grahams' sole expert A.J. McPhate, a professional engineer.  All American characterizes McPhate's reports as nothing more than "credentials and a subjective opinion."  All Am.'s Reply [155] at p. 4 (citing *Brown v. Illinois Cent. R.R. Co.,* 705 F.3d 531, 537 (5th Cir. 2013)).  All American contends that "this Court should preclude A.J. McPhate from offering any opinions that the cargo elevator violated any standards of care applicable to either design or manufacture of [the subject cargo elevator]" because he does not "cite to any objective standards as to what is actually required in the industry."  All Am's Reply [155] at p. 8; All Am.'s Mem. [141] at p. 8.

## II.  <u>DISCUSSION</u>

A.   <u>Legal Standard</u>

Federal Rule of Evidence 702 provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
>
> (a)   the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b)   the testimony is based on sufficient facts or data;
>
> (c)   the testimony is the product of reliable principles and

> methods; and
>
> (d)    the expert has reliably applied the principles and methods to the facts of the case.

FED. R. EVID. 702.

"The party offering the expert must prove by a preponderance of the evidence that the proffered testimony satisfies the rule 702 test." *Mathis v. Exxon,* 302 F.3d 448, 459-60 (5th Cir. 2002). The Court functions as a gatekeeper and ensures that an expert is properly qualified, and that his testimony is both reliable and relevant. *Curtis v. M&S Petroleum, Inc.,* 174 F.3d 661, 668 (5th Cir. 1999)(relying on *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 590-93 (1993)); *see United States v. McMillan,* 600 F.3d 434, 456 (5th Cir. 2010).

To be reliable, an expert opinion must be the product of reliable principles and methods. FED. R. EVID. 702(c). Otherwise, it is "'unsupported speculation or subjective belief.'" *Johnson v. Arkema, Inc.,* 685 F.3d 452, 459 (5th Cir. 2012)(citing *Daubert,* 509 U.S. at 590). *Daubert* "provides an illustrative list of factors that may aid a court in evaluating reliability." *Mathis,* 302 F.3d at 460. These factors include

> (1) whether the theory or technique has been tested; (2) whether the theory or technique has been subjected to peer review and publication; (3) the known or potential rate of error of the method used and the existence and maintenance of standards controlling the technique's operation; and (4) whether the theory or method has been generally accepted in the scientific community.

*Kumho Tire Co., Ltd. v. Carmichael,* 526 U.S. 137, 149-50 (1999).

"[T]he reliability analysis must remain flexible: not every *Daubert* factor will be applicable in every situation; and a court has discretion to consider other factors it deems relevant." *Guy v. Crown Equipment Corp.,* 394 F.3d 320, 325 (5th Cir. 2004)(citing *Kumho Tire,* 526 U.S. at 151). "Although the *Daubert* analysis is applied to ensure expert witnesses have employed reliable principles and methods in reaching their conclusions, the test does *not* judge the expert conclusions themselves." *Id.* (citing *Daubert,* 509 U.S. at 594-95). "The trial court is charged with making initial determinations as to the admissibility of evidence." *United States v. 14.38 Acres of Land,* 80 F.3d 1074, 1077 (5th Cir. 1996). "[T]he trial court's role as gatekeeper is not intended to serve as a replacement for the adversary system[.]" *Id.* "'[V]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence.'" *Mathis,* 302 F.3d at 461 (quoting *Daubert*, 509 U.S. at 596).[1] "As a general rule, questions relating to the bases and sources of an expert's opinion affect the weight to be assigned that opinion rather than its admissibility and should be left for the jury's consideration." *14.38 Acres of Land,* 80 F.3d at 1078.

---

[1]"Additionally, in the event the trial court concludes that the scintilla of evidence presented supporting a position is insufficient to allow a reasonable juror to conclude that the position more likely than not is true, the court remains free to direct a judgment, Fed. R. Civ. P. 50(a), and likewise to grant summary judgment, Fed. R. Civ. P. 56." *Daubert,* 509 U.S. at 596.

B.     Analysis

All American contends that McPhate should be excluded from testifying as an expert because he has "fail[ed] to provide a scintilla of empirical data, underlying factual predicate, supporting documentation or description of methodology in support [sic] his conclusions that the produce [sic] is 'defective in design and construction.'" All Am.'s Mem. [139] at p. 2.  All American's argument primarily focuses on McPhate's failure to reference a "*standard or principle of law, regulation, guideline, manufacturer specification, or anything* which would be applicable to prove that an alternative design feature was available in either [Louisiana or Mississippi], or that there was a standard of care in manufacture or design applicable in either Louisiana or Mississippi."  All Am.'s Reply [155] at p. 4 (emphasis in original).

The Court is accorded broad discretion in determining whether an expert's opinion is admissible and is satisfied that McPhate's testimony is "ground[ed] in the methods and procedures of science" and "more than subjective belief or unsupported speculation." *Daubert,* 509 U.S. at 590.  McPhate opines that the elevator's shaft sheared due to metal fatigue, which was caused by misalignment of the "drum and the gear-motor output shaft."  A.J. McPhate's Exp. Rep. [148-1] at p. 3.  He asserts that a flaw in the design of the elevator's draw work and improper installation led to product failure.  A.J. McPhate's Supp. Exp. Rep. [148-6] at p. 3.  McPhate has provided empirical data supporting his opinions, namely a diagram of the gearbox shaft depicting "bore hole" geometrical measurements, which he applies to

mathematically calculate a purported misalignment of the drum to the shaft. Diagram [148-5].  McPhate also utilizes and analyzes a mathematical formula for calculating "gearbox output shaft overhung load," which he obtained from the 2012 Basic Training Manual published by Leeson, the gearbox's manufacturer.  Supp. Exp. Rep. of A.J. McPhate [148-6].

While All American has cited authority which acknowledges that industry standards and local ordinances, regulations, and safety codes are often relied on by expert witnesses as evidence relevant to establishing a standard of care, this authority does not stand for the proposition that an expert must be excluded unless he references such standards.  *See Knight v. Kirby Inland Marine, Inc.,* 482 F.3d 347, 354 (5th Cir. 2007)("Where an expert otherwise reliably utilizes scientific methods to reach a conclusion, lack of textual support may go to the weight, not the admissibility, of the expert's testimony.").  Indeed, one of the opinions cited by All American acknowledges that voluntary industry guidelines and standards "do not amount to legal requirements."  *Girdler v. United States,* 923 F. Supp. 2d 168, 191 (D.D.C. 2013).  Furthermore, All American's own expert Ronald Creak calls into question whether local laws regulating the manufacture and design of the subject cargo elevator even exist.  Creak concluded that "[no] legally enforceable safety code applicable to the design, manufacture and installation of the subject 'Cargo Elevator'" existed in the State of Mississippi at the time the elevator was installed. Ronald Creak's Exp. Rep. [148-4] at p. 5.

All American's criticisms regarding the bases, sources, and methods

underlying McPhate's opinions "affect the weight to be assigned th[ose] opinion[s] rather than [their] admissibility and should be left for the jury's consideration." *United States v. 14.38 Acres of Land,* 80 F.3d 1074, 1078 (5th Cir. 1996). All American will have the opportunity at trial to vigorously cross-examine McPhate. It is the jury's province to accept or reject McPhate's testimony, assign it proper weight, and to adjudge credibility. *Palasota v. Haggar Clothing Co.,* 499 F.3d 474, 480 (5th Cir. 2007).

III.  <u>CONCLUSION</u>

**IT IS, THEREFORE, ORDERED AND ADJUDGED** that, Defendant All American Cargo Elevator, LLC's Motion [138] to Exclude Expert for Failure of Methodology is **DENIED**.

**SO ORDERED AND ADJUDGED,** this the 16th day of September, 2013.

<u>*s/ Halil Suleyman Ozerden*</u>
HALIL SULEYMAN OZERDEN
UNITED STATES DISTRICT JUDGE

-8-