IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION

SHARON GRAHAM, and
BILLY BOB GRAHAM                                          PLAINTIFFS


V.                                          Civil No. 1:12-cv-58-HSO-RHW


ALL AMERICAN CARGO ELEVATOR, and
LEESON ELECTRIC CORPORATION                       DEFENDANTS


<u>MEMORANDUM OPINION AND ORDER GRANTING IN PART AND
DENYING IN PART DEFENDANT ALL AMERICAN CARGO ELEVATOR,
LLC'S MOTION [140] FOR SUMMARY JUDGMENT</u>

BEFORE THE COURT is Defendant All American Cargo Elevator, LLC's

("All American's") Motion [140] for Summary Judgment.  Plaintiffs Sharon and

Billy Bob Graham have filed a Response [150] and a Response Memorandum [151],

and All American has filed a Reply [156].  After considering the pleadings on file,

the record, and relevant legal authorities, the Court finds that All American's

Motion [140] for Summary Judgment should be granted in part and denied in part.

Sharon Graham's claims for breach of express warranty, breach of the implied

warranty of merchantability, breach of the implied warranty of fitness for a

particular purpose, and punitive damages should be dismissed.  Ms. Graham's

claims for defective design and failure to warn should proceed to trial, as should

Billy Bob Graham's claim for loss of consortium.

I.  <u>BACKGROUND</u>

In 2007, Defendant All American sold Plaintiffs Sharon and Billy Bob

Graham a residential cargo elevator for use in their elevated home in Pearlington, Mississippi.  Dep. of Sharon Graham [140-5] at p. 11-12, 19-20.  All American installed the elevator and serviced it pursuant to a maintenance agreement purchased by the Grahams.  *Id*.  On October 18, 2010, the cargo elevator fell approximately ten feet to the ground when Ms. Graham stepped onto its platform to retrieve a three to four pound potted plant.  *Id*. at pp. 48-53, 56, 78.  Ms. Graham descended with the elevator and alleges that she crushed her heel and suffered other injuries upon impact.  *Id*. at pp. 48-53, 56, 78.  The Grahams assert that the shaft on the gearbox of the elevator's drawing mechanism sheared, causing the elevator to free fall.  Pls.' Resp. [151] at pp. 1-2.  They allege that All American is liable because "the cause of product failure was misalignment of the drum which was undisputedly welded on the Leeson [Electric Corporation] gear box shaft by All American."  *Id*. at p. 2.

On October 26, 2011, the Grahams filed a Complaint against All American in the Circuit Court of Hancock County, Mississippi.  Pls.' Compl. [140-1] at pp. 2-4.  They filed an Amended Complaint on October 31, 2011, and a Second Amended Complaint, adding the gearbox manufacturer Leeson as a Defendant, on January 20, 2012.  Pls.' Am. Compl. [140-2] at pp. 3-4; Pls.' Sec. Am. Compl. [140-3] at p. 1.  The action was removed to this Court in February 2012.  The Grahams allege

> that the product which broke, was designed and/or manufactured in a defective manner and breached implied and express warranties and failed to conform to other factual representations, upon which the Plaintiffs (or Co-Defendant, All American) relied upon in electing to use said

product and;

(1)   The defective condition rendered the product unreasonably dangerous to the user or consumer and;

(2) The defective and unreasonable condition of the product caused the damages to the Plaintiff which recovery is sought.

Pls.' Sec. Am. Compl. [140-3] at p. 2.  The Grahams additionally assert "[t]hat the Defendants failed to adequately warn of possible failure and free fall potential." Pls.' Compl. [140-1] at p. 2; First Am. Compl. [140-2] at p. 2.

The Grahams' claims against Leeson (now known as RBC Manufacturing Corporation) have been dismissed.  Agreed Order of Dismissal [160].  Now before the Court is All American's Motion [140] Summary Judgment.

## II.   DISCUSSION

### A.   Summary Judgment Standard

Federal Rule of Civil Procedure 56(a) provides that summary judgment is appropriate "[i]f the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  FED. R. CIV. P. 56(a).  The purpose of summary judgment is to isolate and dispose of factually unsupported claims or defenses.  *Melton v. Teachers Ins. & Annuity Ass'n of Am.,* 114 F.3d 557, 560 (5th Cir. 1997)(citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986)).

To rebut a properly supported motion for summary judgment, the opposing party must show, with "significant probative evidence," that there exists a genuine

issue of material fact.  *Hamilton v. Segue Software, Inc.*, 232 F.3d 473, 477 (5th Cir. 2000).  In deciding whether summary judgment is appropriate, the Court views facts and inferences in the light most favorable to the nonmoving party.  *RSR Corp. v. Int'l Ins. Co.*, 612 F.3d 851, 858 (5th Cir. 2010).  However, if the evidence is merely colorable, or is not significantly probative, summary judgment is appropriate.  *Cutting Underwater Techs. USA, Inc. v. ENI U.S. Operating Co*, 671 F.3d 512, 516 (5th Cir. 2012)(citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)).  "[M]ere conclusory allegations are not competent summary judgment evidence, and such allegations are insufficient, therefore, to defeat a motion for summary judgment."  *Eason v. Thaler*, 73 F.3d 1322, 1325 (5th Cir. 1996).

"There is no material fact issue unless the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *RSR Corp.*, 612 F.3d at 858. "A fact is 'material' if its resolution in favor of one party might affect the outcome of the lawsuit under governing law.  An issue is 'genuine' if the evidence is sufficient for a reasonable jury to return a verdict for the nonmoving party."  *Hamilton*, 232 F.3d at 477 (citing *Anderson*, 477 U.S. at 248).  "The court has no duty to search the record for material fact issues."  *RSR Corp.*, 612 F.3d at 858.  "Rather, the party opposing summary judgment is required to identify specific evidence in the record and to articulate precisely how this evidence supports his claim."  *Id.*

B.    Analysis

Sharon Graham is pursuing defective design, failure to warn, and breach of

express warranty claims pursuant to the Mississippi Products Liability Act

("MPLA"), Mississippi Code section 11-1-63.  She is asserting claims for breach of

the implied warranty of merchantability and fitness for a particular purpose

pursuant to Article 2 of the Uniform Commercial Code governing the sale of goods,

as codified in Mississippi Code sections 75-2-314 and 75-2-315.  She seeks

compensatory and punitive damages.  Billy Bob Graham is pursuing a claim for loss

of consortium.  All American contends that summary judgment must be granted in

its favor on all of the Grahams' claims for a variety of reasons.

      1.   <u>Defective Design Claim</u>

To prevail on an MPLA claim, the plaintiff must prove by a preponderance of

the evidence that at the time the product left the control of the manufacturer or

seller, the product had a defective condition, which rendered it unreasonably

dangerous to the user or consumer, and the defective and unreasonably dangerous

condition proximately caused the damages for which recovery is sought.  Miss. Code

Ann. § 11-1-63(f).  A plaintiff pursuing a defective design claim must also establish

that: (1) the manufacturer or seller knew, or in light of reasonably available

knowledge or in the exercise of reasonable care should have known, about the

danger that allegedly caused the plaintiff damage; (2) the product failed to function

as expected; and (3) there existed a feasible design alternative that would have in

reasonable probability prevented the harm.  Miss. Code Ann. § 11-1-63(f).   "In other

words, the danger presented by the defect must be reasonably foreseeable, and a

feasible design alternative must have existed."  *Hyundai Motor Am. v. Applewhite,*

53 So. 3d 749, 756 (Miss. 2011).

      a.    <u>Evidence of Misalignment</u>

All American maintains that Ms. Graham's defective design claim must fail because her sole expert A.J. McPhate, a mechanical engineer, "provides no objective evidence that the triggering condition, a drum-shaft misalignment, was present, merely stating that any misalignment would cause a product failure."  All Am.'s Mem. [141] at pp. 6-7.  All American's criticism focuses on the following sentence in McPhate's initial report: "The rigid connection between the drum and the gear-motor output shaft causes any angular misalignment to induce cyclic bending stresses in the gear-motor output shaft." A.J. McPhate's Exp. Rep. [148-1] at p. 3.  Reading McPhate's initial report together with his  supplemental reports, it is sufficiently clear that McPhate identified a purported drum-shaft misalignment in the subject cargo elevator and concluded that it caused product failure.  McPhate supports his conclusion with a diagram of the gearbox shaft depicting "bore hole" measurements, which he applies to mathematically calculate a purported drum-shaft misalignment.  Diagram [148-5].  McPhate's testimony creates a material fact issue regarding whether the residential cargo elevator was defective.  Summary judgment should not be granted in favor of All American on this basis.

      b.    <u>Use of Industry Standards</u>

All American contends that Ms. Graham's defective design claim must be dismissed because McPhate does not "cite to any objective standards as to what is actually required in the industry, as opposed to how he would personally fix the

problem." All Am.'s Mem. [141] at p. 8.  The Court has already addressed and

rejected this argument in its Memorandum Opinion and Order entered herewith

denying All American's *Daubert* Motion to Exclude McPhate as an expert.  Mem.

Op. and Order [163] at p. 7.  All American's criticism of the sources and

methodology of McPhate's opinions affect the weight to be assigned those opinions

rather than their admissibility and should be left for the jury's consideration.

*United States v. 14.38 Acres of Land,* 80 F.3d 1074, 1078 (5th Cir. 1996); *see Knight*

*v. Kirby Inland Marine, Inc.,* 482 F.3d 347, 354 (5th Cir. 2007)("Where an expert

otherwise reliably utilizes scientific methods to reach a conclusion, lack of textual

support may go to the weight, not the admissibility, of the expert's testimony.").

      c.   <u>Evidence that Defendant All American Should Have Known
About the Danger</u>

In a defective design case, "[t]he manufacturer or product seller shall not be

liable" unless the plaintiff proves that "at the time the product left the control of the

manufacturer or seller[,]"

> [t]he manufacturer or seller knew, or in light of reasonably
> available knowledge or in the exercise of reasonable care
> should have known about the danger that caused the
> damage for which recovery is sought . . . .

Miss. Code Ann. § 11-1-63(f)(i).

All American contends that the Grahams have provided no evidence that All

American knew or should have known about the danger of drum-shaft

misalignment.  All Am.'s Mem. [141] at p. 11.  In response, the Grahams point to a

Leeson Gear Catalog containing "electrical/mechanical warnings and cautions."

Leeson Gear Catalog [150-9].  The Catalog warns that "[o]verhung loads subject shaft bearings and shafts to stress which may cause premature bearing failure and/or shaft breakage from bending fatigue, if not sized properly."  *Id.* at p. 2.  The Grahams also reference a Leeson user's manual, which states that "[o]verhung load can be eased by locating a sheave or sprocket as close to the reducer bearing as possible.  In cases of extreme overhung load, an additional outboard bearing may be required."  Leeson's 2012 Basic Training Manual [148-6].  The Grahams have submitted evidence creating a genuine issue of material fact as to whether All American knew or should have known about the danger of drum-shaft misalignment.  Ms. Graham's defective design claim should not be dismissed on this basis.

d.   <u>Whether a Feasible Design Alternative Existed</u>

In a defective design case, "the manufacturer or product seller shall not be liable" unless the plaintiff proves that "at the time the product left the control of the manufacturer or seller[,]"

> [t]he product failed to function as expected and there existed a feasible design alternative that would have to a reasonable probability prevented the harm.  A feasible design alternative is a design that would have to a reasonable probability prevented the harm without impairing the utility, usefulness, practicality or desirability of the product to users or consumers.

Miss. Code Ann. § 11-1-63(f)(ii).

All American contends that summary judgment should be granted in its favor

on Ms. Graham's defective design claim because McPhate "completely fails to explain how his proposed solution to the problem would meet the statutory requirement of a feasible design alternative which would reasonably prevent the harm, beyond 'conceptualizing possibilities.'"  Am.'s Mem. [141] at p. 10.  In his reports, McPhate agrees with the gearbox manufacturer's instruction that "[o]verhung load can be eased by locating a sheave or sprocket as close to the reducer bearing as possible."  A.J. McPhate's Exp. Rep. [150-6] at p. 2.  McPhate opines that proper alignment was especially important with regard to the residential cargo elevator at issue because "the outboard bearing is so far from the gearbox."  A.J. McPhate's Exp. Rep. [148-6] at p. 3.  A triable issue of fact exists as to whether the sizing adjustments suggested by McPhate constitute a feasible design alternative under the MPLA.  Summary judgment should not be granted in All American's favor on this basis.

> 2.   <u>Failure to Warn Claim</u>

The MPLA provides that

> [i]n any action alleging that a product is defective because it failed to contain adequate warnings or instructions pursuant to paragraph (a)(i)2 of this section, the manufacturer or seller shall not be liable if the claimant does not prove by the preponderance of the evidence that at the time the product left the control of the manufacturer or seller, the manufacturer or seller knew or in light of reasonably available knowledge should have known about the danger that caused the damage for which recovery is sought and that the ordinary user or consumer would not realize the dangerous condition.

Miss. Code Ann. § 11-1-63(c)(i).

The MPLA defines an "adequate warning or instruction" as one that "a reasonably prudent person in the same or similar circumstances would have provided with respect to the danger and that communicates sufficient information on the dangers and safe use of the product, taking into account the characteristics of, and the ordinary knowledge common to an ordinary consumer who purchases the product[.]"  Miss. Code Ann. § 11-1-63(c)(ii).  All American contends that Ms. Graham's failure to warn claim must be dismissed for two reasons: (1) because All American provided adequate warnings; and (2) because Ms. Graham has not supported her claim with expert testimony, which All American contends is required to support all MPLA failure to warn claims.  All Am.'s Mem. [141] at pp. 12-13; All Am.'s Reply [156] at pp. 6-7.

At the time of purchase, Sharon Graham signed a Hold Harmless Agreement, which informed her that the elevator was "designed for the transportation of cargo only [and] not designed to be used for the transportation of persons."  All Am.'s Mem. [141] at p. 13; Hold Harmless Agreement [150-11].  The elevator was marked "Cargo Elevator Only," and a warning provided: "CAUTION: No Riders Permitted."  All Am.'s Mem. [141] at p. 13.  The Grahams submit that these warnings were not adequate because, in order to use the cargo elevator for its intended purpose, a person is required to step onto the platform to place and retrieve cargo.  They contend that an ordinary user or consumer would not understand from All American's warnings that stepping onto the elevator was improper, as stepping onto the elevator to retrieve cargo is not the same as riding the elevator.  Pls.' Resp.

Mem. [151] at p. 8.  The issue of whether All American's warnings were adequate is a factual one and should be resolved by the jury.  *Wyeth Labs., Inc. v. Fortenberry,* 530 So. 2d 688, 692 (Miss. 1988).

The failure to warn claim may proceed, even though McPhate did not expressly address warnings in his reports.  "The adequacy of a warning . . . may fall into the category of issues requiring expert testimony" when "the issue presented requires scientific, technical or other specialized knowledge."  *Id.* at 692.  "Where the adequacy of the warning is not obvious to the ordinary layperson it is necessary to have expert testimony as to this issue."  *Id.*  There is no "categorical rule" requiring expert testimony to support every failure to warn claim.  *Weatherspoon v. Nissan N. Am., Inc.,* No. 3:07cv24-DPJ-LRA, 2010 WL 606561, *10 n.3 (S.D. Miss. Feb. 17, 2010).  All American has not presented authority supporting the conclusion that Ms. Graham's failure to warn claim is one so complex that it must be supported by expert testimony.  Summary judgment should not be granted on Ms. Graham's failure to warn claim.

3.   <u>Breach of Express Warranty Claim</u>

To prevail on a breach of express warranty claim under the MPLA, a plaintiff must establish that "[t]he product breached an express warranty or failed to conform to other factual representations upon which the claimant justifiably relied in electing to use the product . . . ."  Miss. Code Ann. § 11-1-63(a)(i)4.  All American asserts that Ms. Graham's express warranty claim should be dismissed because "[t]here is no evidence that [All American] made an express representation about

the elevator or that Plaintiffs relied on any such information."  All Am.'s Mem. [141]

at p. 13.  In response, Ms. Graham references the "Hold Harmless Agreement"

signed by her, which states that "[t]he hoist is designed for cargo that does not

exceed 800 pounds."  Hold Harmless Agreement [150-11].  Ms. Graham asserts that

All American is liable for breach of an express warranty because it assured her that

"the elevator would tolerate 800 pounds which it failed to do."  Pls.' Resp. Mem.

[151] at p. 8.  The Court agrees with All American's argument that Ms. Graham is

attempting "to stretch a warranty for cargo into a warranty for the safety of

person[s] . . . ."  All Am.'s Reply [156] at p. 10.  By its clear terms, the "800 pounds"

provision in the Hold Harmless Agreement expressly relates to cargo only.  Ms.

Graham's breach of express warranty claim should be dismissed.

   4. <u>Breach of Implied Warranty of Merchantability Claim</u>

  Article II of the UCC, as codified in Mississippi Code section 75-2-314,

provides for an implied warranty of merchantability.  "[A] warranty that the goods

will be merchantable is implied in a contract for their sale if the seller is a

merchant with respect to goods of that kind."  Miss. Code Ann. § 75-2-314(1).  The

Grahams contend that the cargo elevator was not merchantable because it was not

"fit for the ordinary purpose for which such goods are used . . . ."  Miss. Code Ann. §

75-2-314(2)(c).  All American contends that even if Ms. Graham could prove that a

defect in the cargo elevator caused the accident, she cannot recover for an alleged

breach of the implied warranty of merchantability because the Grahams failed to

afford All American a reasonable opportunity to cure the elevator's alleged defect.

All Am.'s Mem. [141] at p. 14.

Mississippi Code section 75-2-608 provides:

> (1) The buyer may revoke his acceptance of a lot of commercial unit whose nonconformity substantially impairs its value to him if he has accepted it
>
>> (a) on the reasonable assumption that its nonconformity would be cured and it has not been seasonably cured; or
>>
>> (b) without discovery of such nonconformity if his acceptance was reasonably induced either by the difficulty of discovery before acceptance or by the seller's assurances.
>
> (2) Revocation of acceptance must occur within a reasonable time after the buyer discovers or should have discovered the ground for it and before any substantial change in condition of the goods which is not caused by their own defects.  It is not effective until the buyer notifies the seller of it.
> . . . .

Miss. Code Ann. § 75-2-608.

The record suggests that the Grahams' acceptance of the cargo elevator may have been reasonably induced by the difficulty of discovering the elevator's alleged defect and thus that the Grahams had grounds for revocation.  Miss. Code Ann. § 75-2-608(1)(b).  However, section 75-2-608(2) provides that revocation is not effective until the buyer notifies the seller of it.  A buyer must provide notice to the seller of the revocation of acceptance prior to filing suit for breach of the implied warranty of merchantability and thereby afford the seller an opportunity to cure. *Gast v. Rogers-Dingus Chevrolet,* 585 So. 2d 725, 729 (Miss. 1991); *see Watson Quality Ford, Inc. v. Casanova,* 999 So. 2d 830, 834 (Miss. 2009).  No evidence has

been presented to the Court indicating that the Grahams provided All American notice and an opportunity to cure prior to filing suit.  Accordingly, Ms. Graham's claim for breach of the implied warranty of merchantability should be dismissed.

     5.    <u>Breach of Implied Warranty of Fitness for a Particular Purpose Claim</u>

Mississippi Code section 75-2-315 provides for an implied warranty of fitness for a particular purpose "where the seller at the time of contracting has reason to know any particular purpose for which the goods are required and that the buyer is relying on the seller's skill or judgment to select or furnish suitable goods . . . ." Miss. Code Ann. § 75-2-315.  A "particular purpose" is a special use which is particular to the buyer, as opposed to the "ordinary purpose" which is contemplated by the warranty of merchantability.  *Watson,* 999 So. 2d at 835.  "[N]o claim for breach of the implied warranty of fitness for a particular purpose will lie when a product is to be used for its ordinary purpose."  *Id.* (citing *Ford Motor Co. v. Fairley,* 398 So. 2d 216, 219 (Miss. 1981)).

All American asserts that Ms. Graham's breach of implied warranty of fitness for a particular purpose claim must be dismissed because the Grahams purchased and used the cargo elevator for its ordinary use and not a particular use.  All Am.'s Mem. [141] at p. 15.  The Grahams have offered no evidence that the residential cargo elevator was purchased or used for anything other than its ordinary purpose. Ms. Graham's breach of the implied warranty of fitness for a particular purpose claim should be dismissed.

6.     Billy Bob Graham's Loss of Consortium Claim

All American argues that because Ms. Graham's claims must be dismissed,

Mr. Graham's loss of consortium claim must also be dismissed because it is a

derivative claim.  All Am.'s Mem. [141] at p. 16.  For the reasons already stated, Ms.

Graham's claims for defective design and failure to warn will proceed to trial.

Therefore, Mr. Graham's loss of consortium will also proceed.

7.     Noneconomic Damages

The Grahams seek $2,000,000 in compensatory damages.  Pls.' Sec. Am.

Compl. [140-3] at pp. 2-3.  All American requests an order "precluding an award

over the amount of one million dollars" for noneconomic damages pursuant to

Mississippi Code section 11-1-60(2)(b).  All Am.'s Mem. [141] at p. 16.  The Grahams

acknowledge that section 11-1-60(2)(b) provides a cap on noneconomic damages.

Pl.'s Resp. Mem. [151] at p. 10.  No order is needed on this issue.  The parties agree

that section 11-1-60(2)(b) controls.

8.     Punitive Damages

"Punitive damages may not be awarded if the claimant does not prove by

clear and convincing evidence that the defendant against whom punitive damages

are sought acted with actual malice, gross negligence which evidences a willful,

wanton or reckless disregard for the safety of others, or committed actual fraud."

Miss. Code Ann. § 11-1-65(1)(a).  "When deciding whether to submit the issue of

punitive damages to a trier of fact, the trial court looks at the totality of the

circumstances, as revealed in the record, to determine if a reasonable, hypothetical

trier of fact could find either malice or gross neglect/reckless disregard." *Bradfield v. Schwartz,* 936 So. 2d 931, 936 (Miss. 2006). "Mississippi law does not favor punitive damages[,] . . . and [they] are allowed with caution and within narrow limits." *Warren v. Derivaux,* 996 So. 2d 729, 738 (Miss. 2008)(internal citations omitted). "An award of punitive damages is an extraordinary remedy, reserved for the most egregious case, and designed to discourage similar misconduct." *T.C.B. Constr. Co., Inc. v. W.C. Fore Trucking, Inc.,* No. 2010-CT-00177-SCT, — So. 3d —, 2013 WL 718628, * 2 (Miss. Feb. 28, 2013).

The Court, having considered the totality of the circumstances as revealed in the record, finds that the allegations and proof presented, even when viewed in the light most favorable to the Grahams, would not support a finding by clear and convincing evidence of conduct on All American's part that warrants the extraordinary remedy of punitive damages. Ms. Graham's punitive damages claim should be dismissed.

## III.  CONCLUSION

**IT IS, THEREFORE, ORDERED AND ADJUDGED** that, Defendant All American Cargo Elevator, LLC's Motion [140] for Summary Judgment is **GRANTED IN PART AND DENIED IN PART**.  Plaintiff Sharon Graham's claims for breach of express warranty, breach of the implied warranty of merchantability, breach of the implied warranty of fitness for a particular purpose, and punitive damages are **DISMISSED WITH PREJUDICE**.  Plaintiff Sharon

Graham's claims for defective design and failure to warn will proceed to trial, as will Billy Bob Graham's claim for loss of consortium.

**SO ORDERED AND ADJUDGED,** this the 16th day of September, 2013.

*s/ Halil Suleyman Ozerden*

HALIL SULEYMAN OZERDEN
UNITED STATES DISTRICT JUDGE